**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRENT BERKMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | Judge |
| v. | ) ) | |
| JEFFREY I. FRIEDMAN, DOUGLAS CROCKER II, JON A. FOSHEIM, MICHAEL E. GIBBONS, JAMES J. SANFILIPPO, JAMES A. SCHOFF, RICHARD T. SCHWARZ, BSREP II ARIES POOLING LLC, and BSREP II ARIES DE MERGER SUB INC., , | ) ) ) ) ) ) ) ) ) | **CLASS ACTION**  **VERIFIED SHAREHOLDER CLASS AND DERIVATIVE ACTION COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY** |
| Defendants, | ) ) ) | |
| – and – | ) ) | |
| ASSOCIATED ESTATES REALTY CORPORATION, an Ohio Corporation | ) ) ) | **JURY DEMAND ENDORSED HEREON** |
| Nominal Party. | ) ) | |

Plaintiff Brent Berkman ("Plaintiff"), by his undersigned counsel, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder and derivative class action brought by Plaintiff on behalf of Associated Estates Realty Corporation ("Associated Estates" or the "Company") against Associated Estates' Board of Directors (the "Board" or "Individual Defendants"), BSREP II Aries Pooling LLC ("Brookfield") and BSREP II Aries DE Merger Sub Inc. ("Merger Sub") (collectively, the "Defendants").  The allegations herein are made in support of Plaintiff's claims challenging Defendants' conduct in connection with the sale of Associated Estates to Brookfield (the "Proposed Transaction").

2.      Associated Estates is an independent real estate investment trust ("REIT"), specializing in owning and managing apartment communities in the Midwest, Mid-Atlantic and Southeast regions of the United States.  The Company has a successful track record, having delivered a total return to its shareholders of approximately 195% over the last ten years, nearly double the approximately 98% return of the Morgan Stanley REIT Index.  Notably, in 2014, the Company's total return of 52.6% was the highest among the public multi-family REITs.

3.      On April 22, 2015, Associated Estates and Brookfield issued a joint press release announcing entry into an Agreement and Plan of Merger dated April 22, 2015 (the "Merger Agreement") to sell Associated Estates to Brookfield, whereby Brookfield will purchase all of Associated Estates' outstanding common shares at a purchase price of $28.75 per share (the "Merger Consideration").  The Proposed Transaction is valued at approximately $2.5 billion, including the assumption of debt.

4.      The Proposed Transaction is the product of a hopelessly flawed "process" which, to the detriment of the Company's public shareholders, was conducted at the behest of the real estate investment firm Land and Buildings ("L&B"), a short-term shareholder and activist investor

that has been pressuring the Company to sell itself since June 2014.  Indeed, in November 2014, L&B announced its intention to launch a proxy battle and, despite the Board's attempts to appease L&B, ultimately nominated its own slate of directors for election at the Company's May 22, 2015 annual meeting.

5.      As described below, the Proposed Transaction is fundamentally unfair to Plaintiff and the other public shareholders of the Company and the Merger Consideration inadequately compensates Associated Estates' public shareholders for their valuable holdings in the Company. The conduct of the members of the Board constitutes a breach of their fiduciary duties owed to Associated Estates' public shareholders, and a violation of the applicable legal standards governing their conduct.

6.      Additionally, Defendants agreed to lock up the Proposed Transaction with unreasonable deal protection devices that serve to prevent other bidders from making a successful competing offer for the Company.  Specifically, pursuant to the Merger Agreement, the Defendants agreed to: (i) a strict "no-solicitation" provision that prohibits the Company from soliciting other potential acquirers or from continuing ongoing discussions with potential acquirers; (ii) a four-day matching rights period during which Brookfield can match any superior proposal received by the Company; and (iii) a provision that requires the Company to pay Brookfield a "termination fee" of $60 million in cash, in order to enter into a transaction with a superior bidder.  These provisions unreasonably inhibit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Associated Estates.

7.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction until such time as

Defendants adopt and implement a procedure or process to obtain a transaction that provides the best possible terms for shareholders, or rescission of the Merger Agreement to the extent that the Proposed Transaction has been consummated.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     This Court has jurisdiction over Defendants because Associated Estates is incorporated and headquartered in Ohio and each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper under 28 U.S.C. §1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

11.     Plaintiff is, and was all times relevant hereto, a shareholder of Associated Estates.

12.     Nominal party Associated Estates, an Ohio corporation, is a REIT and a member of the S&P 600, Russell 2000, and MSCI US REIT Indices.  Its principal executive offices are located at 1 AEC Parkway, Richmond Heights, Ohio.

13.     Defendant Jeffrey I. Friedman ("Friedman") has served as the Company's Chief Executive Officer ("CEO"), Chairman of the Board, and an Associated Estates director since July 1993 and as President since December 2002.  Defendant Friedman previously served as President

of Associated Estates from July 1993 to February 2000 and has held various other positions with the Company since 1974.  Defendant Friedman is a citizen of Ohio.

14.     Defendant Douglas Crocker II ("Crocker") has served as an Associated Estates director since December 2014.  Defendant Crocker is a citizen of Ohio.

15.     Defendant Jon A. Fosheim ("Fosheim") has served as an Associated Estates director since February 2015.  Defendant Fosheim is a citizen of Ohio.

16.     Defendant Michael E. Gibbons ("Gibbons") has served as an Associated Estates director since October 2004. Defendant Gibbons is a citizen of Ohio.

17.     Defendant James J. Sanfilippo ("Sanfilippo") has served as an Associated Estates' director since February 2012.  Defendant Sanfilippo is a citizen of Ohio.

18.     Defendant James A. Schoff ("Schoff") has served as an Associated Estates director since May 2006.  Defendant Schoff is a citizen of Ohio.

19.     Defendant Richard T. Schwarz ("Schwarz") has served as Lead Director since March 2006 and as an Associated Estates director since 1994.  Defendant Schwarz is a citizen of Ohio.

20.     Defendants set forth in paragraphs 13 to 19 are referred to herein as the "Board" or the "Individual Defendants."

21.     Defendant Brookfield is a Delaware limited liability company.  Accordingly Brookfield is a citizen of Delaware.

22.     Defendant Merger Sub is a Delaware corporation and wholly owned subsidiary of Defendant Brookfield. Accordingly Merger Sub is a citizen of Delaware. Upon completion of the Proposed Transaction, Defendant Merger Sub will merge with and into Associated Estates and cease its separate corporate existence.

23.     The Individual Defendants, Brookfield and Merger Sub are referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure individually and on behalf of all holders of the common stock of Associated Estates, and their successors in interest, who have been and will be harmed by the wrongful conduct of the Defendants as alleged herein (the "Class").  The Class excludes Defendants, and any person, firm, trust, corporation or other entity related to, affiliated with, or controlled by any of the Defendants, as well as the immediate families of the Defendants.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.  As of April 21, 2014, the total number of issued and outstanding Associated Estates shares was more than 57.8 million.  Members of the Class are scattered throughout the United States and are so numerous that it is impracticable to bring them all before this Court.

27.     Questions of law and fact exist that are common to the Class, including, among others: (i) whether Defendants have breached their fiduciary duties owed to Plaintiff and the Class and/or aided and abetted such breaches; and (ii) whether Defendants will irreparably harm Plaintiff and the other members of the Class if Defendants' conduct complained of herein continues.

28.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the

Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

30. Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

**Company Background and its Bright Future**

31. Associated Estates is a REIT with a portfolio of fifty- six (56) apartment communities containing 15,004 units located in ten (10) states, which include two committed acquisitions with 681 units and five apartment communities with 1,446 units in various stages of active development. The Company has an impressive track record. During the past ten years, Associated Estates has delivered total return to its shareholders of approximately 195%, nearly double the approximately 98% return of the Morgan Stanley REIT Index. In 2014, the Company's total return of 52.6% was the highest among the public multi-family REITs.

32. The Company continues to enhance its successful track record of improving margins while increasing the value of its portfolio by efficiently recycling capital through property acquisitions and dispositions. This ongoing strategic plan continues to create ever-increasing value for Associated Estates' shareholders. During 2014, for example, the Company's five property dispositions produced gains of over $133 million and generated an internal rate of return of 16.2%. Following its strategy has enabled the Company to create a strong portfolio of newer, high-quality

properties in growing markets, enabling continued and accelerating growth in both shareholder returns and quarterly cash dividends, which alone have increased by 18% over the past three years.

33.    Despite the Company's successful track record and promising prospects, on June 3, 2014, L&B, which had just acquired over 1% of the Company's shares, demanded that the Board sell Associated Estates.  In its letter to the Board, in addition to noting the Company's impressive holding and growth potential, L&B stated: "AEC's high quality, high growth apartment portfolio is not best suited for the public markets in its current form and that shareholder value can best be maximized through the sale of the company."  The letter also implied that L&B would initiate a proxy battle if the Board did not comply with its demands, stating:

> [i]n addition to considering a sale of the company to maximize shareholder value, a board or management refresh should be undertaken.  New perspectives could lead to an improved strategic direction as well as greater market acceptance.  The average tenure of the current board of directors is over 14 years.

34.    Following its June 3, 2014 letter, L&B continued to increase its ownership of the Company.  By November 14, 2014, L&B had increased its holdings in the Company to 2.9% of Associated Estates' outstanding shares.

35.    Then, on November 17, 2014, L&B issued a press release announcing its intention to nominate its own slate of seven directors to replace the entire Board of Associated Estates.  In the press release, L&B argued that the Company's stock should be trading at a premium to Associated Estates' $29 net asset value, and provided more details on the Company's "entrenched, intertwined and stale Board of Directors," including that:

> [t]he three member Executive committee is comprised of Jeff Friedman, his brother-in-law, and AEC's long-time lawyer and the Executive committee" ... possesses the power of the Board of Directors in the management of the business and affairs of the Company..."; given the clear lack of independence, in our view, it is no wonder that shareholder value has not been maximized.

36.     That same day, Associated Estates responded with a press release stating why it believed it had "the right plan and people" to create maximum, long-term value for shareholders, and delineating the Company's achievements and prospects.  The Associated Estates press release stated, in pertinent part:

...While we are always open to potentially value-enhancing alternatives, at this time we believe the best path to maximizing long-term shareholder value is the continued successful execution of the Company's strategic plan, which includes:

- Maximizing total shareholder returns through a combination of prudent capital appreciation and well-covered dividend income growth

- Further strengthening our investment grade balance sheet, reducing our ratio of secured debt to undepreciated book value and maintaining our industry leading low cost of debt

- Efficiently recycling capital to grow our best-in-class portfolio in highly attractive submarkets while reducing risk through deliberate diversification

- Creating value via shrewd acquisitions and utilizing our preeminent, national development platform to skillfully execute our fully funded development pipeline

- Opportunistically harvesting value with strategic dispositions at attractive prices

- Optimizing our operations by rigorously managing expenses and attracting, retaining and motivating the most effective leaders and team members in our industry

While we respect Land and Buildings' views, Associated Estates remains keenly focused on the execution of our strategic plan. The Company's track record of delivering industry leading, long-term, total shareholder returns, as well as the following, notable achievements, affirm that Associated Estates has the right plan and the right team in place to successfully grow the company and create value for shareholders and other stakeholders:

- Cultivated a diversified portfolio of high-quality properties in high growth submarkets with an average age of 15 years (second youngest in the multifamily sector) through the disposition of 47 assets since 2005 (average age of 22 years) while acquiring 24 properties (average age of six years)

- Increased average property revenue per occupied unit from $883 in 2007 to $1,238 in 2014

- Grew average annual same store NOI by 3.9% from 2004 through 2013 (second best growth rate in the multifamily sector over that period)

- Increased the quarterly cash dividend by 18% over the last three years, while maintaining one of the lowest payout ratios in the multifamily sector

- Achieved investment grade ratings from Moody's, Fitch and S&P, while reducing our net debt to annualized EBITDA from 8.1x in 2011 to 6.9x at Q3 2014, increasing our fixed charge coverage ratio from 2.3x in 2011 to 3.4x times at Q3 2014, and expanding unencumbered NOI from 44.2% in 2011 to 73.8% at Q3 2014

- Demonstrated the tremendous value creation power of our development platform with the 2014 sale of our Vista Germantown property for $53.3 million, which represented a market cap rate of 4.5%, an IRR of 19.8% and a gain of $15.8 million (42%)

- Validated the quality of our fully funded development pipeline, while reducing financial and execution risk, by forming 50/50 joint ventures with AIG Global Real Estate (350 8th project in San Francisco's SoMa Neighborhood) and Legendary Developments (950 East Third project in downtown Los Angeles' Arts District)

37.    L&B continued its campaign against the Board over the following months, repeatedly calling into question the independence and qualifications of the Board and insisting that the Company be taken private.  In response, Associated Estates constantly rebutted L&B's allegations and reminded the public that it was executing a successful strategic plan.

38.    At the same time, however, the Board began caving to certain of L&B's demands. Associated Estates (1) replaced two longstanding directors with Defendants Crocker and Fosheim in December 2014 and February 2015, respectively, (2) announced that it was proposing to appoint a third new director to add as an eighth Board member, and (3) ultimately went so far as to agree to add two appointees chosen by L&B to the Board.

39.     L&B was not to be appeased, however.  Describing the Company's actions as "too little, too late," L&B became increasingly emboldened by the Board's concessions.  Indeed, on March 12, 2015, L&B announced that it was nominating a slate of three directors to replace Defendants Gibbons, Schoff, and Schwarz, three of the Company's longest tenured directors.  Rather than face a shareholder vote with the very realistic possibility of an embarrassing ouster from the Board, the Defendants caved to L&B's pressure to sell the Company.

40.     Unfortunately for the Company's public shareholders, at the behest of L&B, the Board agreed to cash Associated Estates' shareholders out for the inadequate Merger Consideration.

**The Proposed Transaction**

41.     On April 22, 2015, Associated Estates and Brookfield issued a joint press release announcing the Proposed Transaction.  The press release stated, in pertinent part:

> CLEVELAND, April 22, 2015 – Associated Estates Realty Corporation ("Associated Estates") (NYSE, NASDAQ: AEC) today announced its Board of Directors has unanimously approved a definitive merger agreement under which a real estate fund managed by Brookfield Asset Management ("Brookfield") (NYSE/TSX: BAM; Euronext: BAMA) will acquire all outstanding shares of common stock of Associated Estates for $28.75 per share in cash. The transaction is valued at approximately $2.5 billion including the assumption of debt.
>
> Brookfield is a global alternative asset manager with more than $200 billion in assets under management. Brookfield has over a 100-year history of owning and operating assets with a focus on property, renewable energy, infrastructure and private equity. Brookfield Property Group, Brookfield's largest investment platform, comprises of sector-specific portfolios in the multifamily, office, retail, industrial, and hotel sectors.
>
> * * *
>
> **Approvals and Anticipated Closing**
> Completion of the transaction is contingent upon customary closing conditions. The Company will convene a special meeting to seek the approval of Associated Estates shareholders, and the annual meeting previously scheduled for May 22, 2015 has

been postponed indefinitely. The transaction is not contingent on receipt of financing by Brookfield.

Closing is expected to occur in the second half of 2015. Associated Estates' headquarters will remain in Richmond Heights, Ohio.

**The Merger Consideration is Inadequate**

42.     Given the Company's successful track record and positioning for future growth, the Proposed Transaction fails to adequately compensate Associated Estates' shareholders for the intrinsic value of the Company.

43.     Defendants agreed to the Proposed Transaction in breach of their fiduciary duties. Rather than face a proxy battle with L&B, the Board acquiesced to its activist investor.

44.     Tellingly, the Merger Consideration is even less than what L&B argued the Company's shares should be trading for.  On January 28, 2015 and again on February 27, 2015, L&B argued that Associated Estates was worth $37 per share.  The Company's shareholders, however, will receive 22% less than that under the Proposed Transaction while L&B will be able to immediately cash out their shares.

45.     Moreover, the Proposed Transaction will also unfairly rob the Company's shareholders of a dividend payment they would have expected to receive around the beginning of August.  These dividend payments, which have grown 18% in the past three years, have comprised a valuable portion of the total return for the Company's shareholders.  However, although the Proposed Transaction will likely not close until late in the second half of 2015, Associated Estates has already stated that it does not expect to pay a dividend after May.  As such, the Company's shareholders aside from Defendants and L&B will miss out on an aggregate dividend payout of over $11 million, assuming the dividend would have bucked the prevailing trend and failed to grow.

**Insiders Will Reap Unique Financial Benefits**

46.     In addition, while the Company's public shareholders are being cashed out for the inadequate Merger Consideration, Company management and certain members of the Board have secured special benefits for themselves.

47.     Specifically, by caving to the demands of L&B and agreeing to sell the Company, each member of the Board has saved himself from the professional embarrassment and severe reputational damage of having control of the Board wrested away through a proxy battle following the Board's failed negotiations and appeasement tactics.

48.     Further, under Section 2.3 of the Merger Agreement, all of the stock options and restricted shares owned by the Individual Defendants will immediately vest and be cashed out upon consummation of the Proposed Transaction.  The Company's Current Report on Form 8-K filed with the U.S. Securities and Exchange Commission on April 27, 2015 summarizes those provisions as follows:

- each option to purchase Company Common Shares ("Option") that is outstanding and unexercised at the Effective Time (whether vested or unvested) will become fully vested and be cancelled, extinguished and converted into the right of the holder to receive an amount in cash, without interest, equal to the product of (i) the total number of Company Common Shares issuable upon exercise of such Option and (ii) the excess, if any, of the Per Share Merger Consideration over the exercise price per share of such Option;

- each share of restricted stock granted under any Company equity plan ("Restricted Share") that is outstanding immediately before the Effective Time (whether vested or unvested, and including restricted stock granted as dividends) will, as of immediately before the Effective Time, become vested and will be treated as an outstanding Company Common Share that will be canceled and extinguished and converted into the right to receive the Per Share Merger Consideration, without interest; to the extent the performance period relating to any Restricted Share that remains subject to performance-based vesting criteria ("Performance Restricted Share") has not expired as of the Effective Time, the Performance Restricted Share will vest in that number of Company Common Shares determined as if the applicable performance-based vesting criteria had been achieved at the maximum level; to the extent the performance period

relating to any Performance Restricted Share has expired as of the Effective Time, the Performance Restricted Share will vest in that number of Company Common Shares determined at the end of the performance period based on actual performance through the end of the performance period;

As a result of these provisions, each non-executive member of the Board will receive immediate vesting of his $100,000 in annual restricted stock awards. Defendant Friedman has also guaranteed himself an immediate and substantial financial windfall under this provision should the Proposed Transaction be consummated, as he alone will reap a nearly $8 million financial windfall by virtue of accelerating equity awards.

49. The Proposed Transaction is wrongful, unfair, and harmful to Associated Estates' public shareholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class members. Specifically, Defendants are attempting to deny Plaintiff and the Class their shareholder rights through the sale of Associated Estates via an unfair process. Accordingly, the Proposed Transaction will benefit the Individual Defendants at the expense of Associated Estates shareholders.

**The Unfair Deal Protection Devices**

50. In addition to concerns regarding the inadequate Merger Consideration and the Board's self-interest, the Merger Agreement features several provisions that work to preclude other bidders from stepping forward with a superior alternative offer. At best, these provisions place shareholders in an unfortunate position and, at worst, question the impartiality of the Board in the negotiation process.

51. First, the Merger Agreement includes a "no solicitation" provision which impairs the ability of the Associated Estates Board to secure an offer that adequately captures the inherent value of the Company and adequately compensates Associated Estates' shareholders for their

ownership interest in the Company.  Specifically, section 5.2(a) of the Merger Agreement prohibits the Board and any Company personnel from soliciting, initiating, facilitating or encouraging alternative proposals in an attempt to procure a price in excess of the amount offered by Brookfield. In conjunction with the matching rights and termination fee discussed below, the no solicitation provision will deter any potential buyers from making a competing bid.

52.     Similarly, section 5.2(c) of the Merger Agreement provides an "information rights" provision whereby the Company must notify Brookfield of any unsolicited competing bidder's offer within 48 hours.  Then, if and only if the Board determines that the competing offer constitutes a Superior Proposal section 5.2(d) grants Brookfield "matching rights," providing Brookfield four business days to amend the terms of the Merger Agreement so that the competing offer ceases to be a Superior Proposal (as defined in the Merger Agreement).

53.     The foregoing provisions have the effect of ensuring that no other company will put forth a competing offer because their offer would be immediately communicated to Brookfield, giving Brookfield an informational advantage against any competing proposal as well as the ability to match any competing bid.

54.     Defendants have also agreed to a termination fee, which may require Associated Estates to pay a termination fee of $60 million to Brookfield in the event that the Company decides to pursue another offer, thereby requiring that the alternate bidder agree to pay a naked premium for the right to provide Associated Estates shareholders with a superior offer.

55.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Associated Estates' assets and business and will be prevented from obtaining the intrinsic value of their equity ownership of the Company.

56.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

57.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law.

## THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

58.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Associated Estates and owe them unwavering duties of care, loyalty, good faith, and independence.

59.     In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to secure a fair value for shareholders and disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(d)     will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)     violates their fiduciary duties or compromises their loyalty, including by putting their interests before the interests of Associated Estates' shareholders.

60.     The Individual Defendants, separately and together, in connection with the Proposed Transaction, violated their duties owed to Plaintiff and the other public shareholders of Associated Estates to secure a fair value for shareholders in a sale of the Company.  As a result of the Individual Defendants' divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their Associated Estates common stock in the Proposed Transaction.

61.     Because the Individual Defendants are knowingly or recklessly breaching their duties of care, loyalty, good faith, and independence in connection with the Proposed Transaction, the burden of proving the inherent or entire fairness of the Proposed Transaction, including all aspects of its negotiation, structure, price and terms, is placed upon Defendants as a matter of law.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

62.     Plaintiff also brings this action derivatively in the right and for the benefit of Associated Estates to redress injuries suffered, and to be suffered, by the Company as a direct result of the violations of state law by Defendants, including breaches fiduciary duty and the violations of fiduciary duty, as well as the aiding and abetting thereof, by the Defendants.

63.     Plaintiff will adequately and fairly represent the interests of Associated Estates and its shareholders in enforcing and prosecuting its rights.

64.     Plaintiff has not made demand on the Board to file suit for the violations of fiduciary duties alleged herein because such a demand was a futile and useless act, particularly for the following reasons:

(a)     All of the directors on the Board are named as wrongdoers and Defendants in this lawsuit;

(b)      All of the directors on the Board are alleged to have committed violations of state law for which they are accountable to the Company and to the Company's shareholders;

(c)      Each of the key officers and directors knew of and/or directly benefitted from the wrongdoing complained of herein, including the monetization of stock options, restricted shares, and performance-based restricted shares only if the Proposed Transaction is consummated;

(d)      Each Defendant approved the unfair Proposed Transaction at issue in this matter;

(e)      In order to bring this suit, all of the directors of Associated Estates would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(f)      The acts complained of constitute violations of the fiduciary duties owed by Associated Estates officers and directors and these acts are incapable of ratification;

(g)      Any suit by the directors of Associated Estates to remedy these wrongs would likely expose the Individual Defendants and Associated Estates to further civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(h)      Each member of the Board is, directly or indirectly, the recipient of remuneration paid by the Company, including benefits, stock options and other emoluments by virtue of their Board membership and control over the Company, the continuation of which is dependent upon their cooperation with the other members of the Board, and their participation and acquiescence in the wrongdoing set forth herein and are therefore incapable of exercising independent objective judgment in deciding whether to bring this action; and

(i)     Because of their association as directors of the Company and their positions as present or former employees, the directors are dominated and controlled so as not to be capable of exercising independent objective judgment.

65.     Plaintiff has not made any demand on Associated Estates shareholders to institute this action since such demand would be futile and useless action for the following reasons:

(a)     Associated Estates is a publicly traded company with over 57.8 million shares outstanding and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for Plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Class Claim for Breach of Fiduciary Duties Against the Individual Defendants

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Associated Estates.

68.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have violated their fiduciary duties by contractually preventing themselves from obtaining higher offers from other interested buyers and attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Associated Estates.

69.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the Class.

70.     As demonstrated by the allegations above, the Individual Defendants have breached their duties of care, loyalty, good faith, and independence owed to the public shareholders of Associated Estates because, among other reasons, they have failed to take steps to ensure the Merger Consideration reflects the fair value of Associated Estates to its public shareholders and/or are attempting to improperly put their personal interests ahead of the interests of Associated Estates shareholders.

71.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they will not receive their fair portion of the value of Associated Estates' assets and businesses and will be prevented from obtaining fair value for their investment.

72.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

73.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

## COUNT II

### Class Claim for Aiding and Abetting Breaches of Fiduciary Duties
### Against Brookfield and Merger Sub

74.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

75.     Defendants Brookfield and Merger Sub aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of the Company, including Plaintiff and the members of the Class.

76.     The Individual Defendants owed to Plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

77.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the Class.

78.     Defendants Brookfield and Merger Sub colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to Plaintiff and the members of the Class.

79.     Defendants Brookfield and Merger Sub participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests. Defendants Brookfield and Merger Sub obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches.  Defendants Brookfield and Merger Sub will benefit, inter alia, from the acquisition of the Company at an inadequate and unfair price if the Proposed Transaction is consummated.

80.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## COUNT III

### Derivative Claim for Breach of Fiduciary Duties Against All Defendants

81.     Plaintiff repeats all previous allegations as if set forth in full herein.

82.     Plaintiff brings this claim derivatively on behalf of Associated Estates.

83.     The Individual Defendants owed the Company certain fiduciary duties as fully set out herein.

84.     By committing the acts alleged herein, the Individual Defendants, aided and abetted by Defendants Brookfield and Merger Sub, have violated the fiduciary duties of care, loyalty, good faith, and independence owed to the Company and public shareholders of Associated Estates and have acted to put their personal interests ahead of the interests of the Company and Associated Estates' shareholders.

85.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive the Company, Plaintiff and other members of the Class of the true value inherent in and arising from Associated Estates.

86.     The Individual Defendants have violated their fiduciary duties by entering Associated Estates into the Merger Agreement without regard to the effect of the Proposed Transaction on the Company and its shareholders.  Defendants Brookfield and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties owed to the Company and its shareholders.

87.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations

toward the Company, Plaintiff and the other members of the Class and/or aided and abetted in the same.

88.     As a result of the Defendants' unlawful actions, the Company, Plaintiff and the other members of the Class will be irreparably harmed in that they will be deprived of the fair value of Associated Estates' assets and operations.  Unless the Proposed Transaction is enjoined by the Court, the Defendants will continue to breach their fiduciary duties owed to the Company, Plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Transaction terms and may consummate the Proposed Transaction, all to the irreparable harm of the Company, Plaintiff and members of the Class.

89.     The Company, Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can the Company, Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Declaring this action to be a properly maintainable as a class and derivative action;

B.     Declaring that the Merger Agreement was entered into in breach of the Individual Defendants' fiduciary duties and is therefore unlawful and unenforceable;

C.     Preliminarily and permanently enjoining Defendants and all those acting in concert with them from consummating the Proposed Transaction until the Individual Defendants exercise their fiduciary duties to obtain a transaction which is in the best interests of Associated Estates' shareholders;

D.     In the event that the Proposed Transaction is consummated, rescinding it or awarding actual and punitive damages to Plaintiff and the Class;

E.      Implementation of a constructive trust, in favor of Plaintiff, upon any benefits improperly received by Defendants as a result of their wrongful conduct;

F.      Awarding Plaintiff fees and expenses in connection with this litigation, including reasonable attorneys' and experts' fees and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 12, 2015

CIANO & GOLDWASSER, L.L.P.
*/s/ Andrew S. Goldwasser*
ANDREW S. GOLDWASSER
(#0068397)
1610 Midland Building
101 Prospect Avenue,
West Cleveland, OH 44115
Telephone: (216) 658-9900
Facsimile: (216) 685-9920
asg@c-g-law.com

WEISSLAW LLP
RICHARD A. ACOCELLI (motion
for *pro hac vice* admission pending)
MICHAEL A. ROGOVIN (motion
for *pro hoc vice* admission pending)
KELLY C. KEENAN (motion for
*pro hac vice* admission pending)
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
racocelli@weisslawllp.com
mrogovin@weisslawllp.com
kkeenan@weisslawllp.com

Attorneys for Plaintiff

<u>VERIFICATION</u>

I, Brent Berkman, hereby declare as follows:

I am the plaintiff in the within entitled action.  I have read the Verified Shareholder Class and Derivative Action Complaint Based upon Self-Dealing and Breach of Fiduciary Duty. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: _____ 5/8/2015 _____

_____

BRENT BERKMAN